# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| SUSAN ARNOLD,<br><br>      **Plaintiff,**<br><br>  *vs.*<br><br>CAROLYN COLVIN, Commissioner of Social Security,<br><br>      **Defendant.** | CAUSE NO. 1:14-cv-894-RLY-DKL |

## REPORT AND RECOMMENDATION

On March 29, 2011, Plaintiff Susan M. Arnold applied for Disability Insurance Benefits ("DIB") under Title II and Supplementary Security Income ("SSI") under Title XVI of the Social Security Act. She alleges a disability onset date of March 13, 2011. Her claims were denied on initial review on June 22, 2011, and again, on reconsideration review, on August 8, 2011. A video hearing was held on June 1, 2012, before an administrative law judge ("ALJ"). The ALJ denied the applications and the Social Security Administration's Appeals Council denied Ms. Arnold's request for review. Ms. Arnold now seeks judicial review of the denial of her applications for benefits. The district judge referred this matter to this magistrate judge for preparation of a report and recommended disposition pursuant to 28 U.S.C. § 636. *Entry Referring Matter to Magistrate Judge* [doc. 23].

## Standards

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. ' 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner=s factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. ' 416.905(a). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). 20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966. The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. ' § 423(d)(2)(B) and 1382c(a)(3)(G). 20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the applicant's impairments

3

are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling. 20 C.F.R. ' 404.1525. If the applicant's impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions. At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. ' 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995,

4

1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work level, then the grids may not be used to determine disability at that level. Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (' 404.1601, *et seq.*).

the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. ' 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Background**

Ms. Arnold alleges that she is disabled at as result of hypertrophic cardiomyopathy, asthma, and generalized anxiety disorder. She alleges that her impairments "affect her ability to lift, squat, bend, stand for long periods of time, reach, walk for distances, kneel and climb stairs." (R. 21.) Further, she alleges that she is no longer able to perform yard work or lift her fifteen-pound child. (*Id.*) Ms. Arnold's mother also alleges that Ms. Arnold is unable to perform yard work and has become stressed by her heart condition. Ms. Arnold alleges that she becomes easily tired, gets lightheaded, has frequent headaches, and experiences anxiety about her situation as a result of her impairments. (*Id.*) Mrs. Arnold was 34 years old at the time of her hearing. She has a tenth-grade education and is able to communicate in English. Her past work history consists of working as a glass cutter and as a machine package sealer.

---

Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

At step one of the sequential-evaluation process, the ALJ found that Ms. Arnold has not engaged in substantial gainful activity since her alleged onset date of March 13, 2011. At step two, the ALJ found that Ms. Arnold has the severe impairments of hypertrophic cardiomyopathy, asthma, and generalized anxiety disorder. At step three, the ALJ evaluated her impairments under Listings 4.00 (cardiovascular system) and 12.04 (affective disorders) and found that they do not meet or medically equal the criteria.

The ALJ determined that Ms. Arnold has the RFC to perform medium work with the additional restrictions of (1) avoiding concentrated exposure to flumes, odors, dusts, gases, and poor ventilation; (2) a low stress environment; and (3) occasional changes in the work setting. The ALJ determined that Ms. Arnold has the capacity to perform at a goal-oriented, as opposed to a production-rate, work pace. Although the ALJ found that Ms. Arnold's impairments could reasonably be expected to cause the types of symptoms that she alleged, she found that Ms. Arnold's allegations about the intensity, persistence and limiting effects of her symptoms were not entirely credible.

At step four, the ALJ found that Ms. Arnold is unable to perform any of her past relevant work. At step five, the ALJ found that Ms. Arnold is able to perform jobs that exist in significant numbers in the national economy, including hand packager, saw-machine tender, and assembler. The ALJ based this determination on Ms. Arnold's age, education, work experience, and RFC. (R. 23.) The ALJ's decision became the

Commissioner's final decision after the Appeals Council denied Ms. Arnold's request for review.

## Discussion

Ms. Arnold argues that the ALJ's decision is erroneous because she overlooked, or ignored, evidence in the record that was favorable to Ms. Arnold. Ms. Arnold argues that the ALJ failed to consider or discuss important evidence in the record favorable to her eligibility for benefits. An ALJ is "required to take into consideration all of the evidence in the record and discuss significant evidence contrary to his ruling." *McBride v. Massanari*, 169 F.Supp.2d 857, 862 (N.D. Ill. 2001).

**1. Evidence regarding cardiomyopathy.** Ms. Arnold first argues that the ALJ failed to discuss the results of a February 2011 echocardiogram that showed: (1) asymmetric septal hypertrophy, (2) "pseudonormal" filling patter of the left ventricle for age, (3) hyperdynamic left ventricular systolic function based on ejection fraction, (4) moderate left atrial dilatation, (5) systolic anterior motion of the mitral valve, (6) evidence of dynamic left ventricle outflow tract obstruction with resting gradient of 36mm Hg that increases to greater than 65mm Hg with Valsalva maneuver, (7) mitral regurgitation, (8) tricuspid regurgitation, and (9) pulmonic regurgitation. (R. 218.)

Ms. Arnold is mistaken. The ALJ's decision does discuss results from the echocardiogram: "an echocardiogram showed asymmetrical septal hypertrophy and systolic anterior motion of the mitral valve." (R. 21.) Although the ALJ did not address

every result of the test, she was not required to do so. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) ("The ALJ's failure to address these specific findings, however, does not render his decision unsupported by substantial evidence because an ALJ need not address every piece of evidence in his decision. The ALJ need only build 'a bridge from the evidence to his conclusion.'"). The ALJ found that Ms. Arnold suffers from obstructive hypertrophic cardiomyopathy and cited the February 2011 echocardiogram. (R. 21.) Ms. Arnold does not show that the nature of the specific test results unmentioned by the ALJ required express discussion.

Ms. Arnold also argues that the ALJ failed to discuss certain findings by Dr. Villavicencio and Dr. Gill from March of 2011. When she was examined by Dr. Villavicencio on March 22, 20122, Ms. Arnold was found to have a systolic murmur that increased with Valsalva maneuver. On March 24, 2011, Dr. Gill diagnosed her with hypertrophic cardiomyopathy and noted that her electrocardiogram was "quite abnormal." (R. 220.) Dr. Gill further noted that her ejection murmur was more prominent when she was standing. (*Id.*) Ms. Arnold argues that the ALJ generally failed to discuss the results of objective cardiomyopathy tests that showed a number of conditions relating to her heart that should have been considered in the disability determination.

The Commissioner responds that the cardiomyopathy-related findings by the physicians in question are reflected in the ALJ's report. The Court agrees. The ALJ noted

Ms. Arnold's diagnoses of hypertrophic cardiomyopathy, her test results, treatments that she received, and functional restrictions that were advised. (R. 21.) Again, an ALJ is not required to address every piece of evidence or every part of every piece of evidence; she must only take all of the evidence into consideration, articulate her reasons that build that bridge from the evidence to her conclusions, in sufficient detail that a reviewing court can trace the path of her reasoning. Her decision shows that she fulfilled that duty. Ms. Arnold does not explain why the specific test results that she cites were significant enough that they required explicit address by the ALJ or how the unmentioned bits of evidence support her claim for benefits. In effect, she is asking that ALJs be burdened with reciting entire records in their decisions — accurately described by the Commissioner as a "copy-and-paste" approach to decision writing — in order to save their decisions from challenge. (*Defendant's Memorandum in Support of the Commissioner's Decision* [doc. 21] ("*Response*"), at 8.) Ms. Arnold does not provide authority for her argument. Ms. Arnold has failed to show that the ALJ erred by not mentioning the cited findings.

    **2. Evidence of risk of sudden cardiac arrest and need for defibrillator.** Ms. Arnold argues that the ALJ erred by not specifically addressing her diagnosed higher risk for sudden cardiac arrest and need for an implantable cardioverter defibrillator.

    Ms. Arnold saw her primary-care physician, Hussan Suradi, M.D., on **May 9, 2011**. His report recorded that she had no symptoms and no non-sustained ventricular

10

tachycardia ("NSVT") during a 48-hour holter monitor. An ECG and echocardiogram had been performed that showed some abnormalities. Dr. Suradi ordered an event monitor and treadmill stress test in order to evaluate any arrhythmias and symptoms and to "risk stratify for sudden cardiac arrest." (R. 229.) Dr. Suradi noted that "[w]e don't see any alarming features that would put [Ms. Arnold] at high-risk for SCD [sudden cardiac death], no need for ICD [implantable cardioverter defibrillator] at this point however will wait for the results of above tests before making final decision." (*Id.*) He saw Ms. Arnold again a little over two months later, on **July 18, 2011**. (R. 312-14.) He reported that the event monitor test showed "two episodes of NSVT (3 beats) patient was asymptomatic". (R. 313.) In his impressions, he wrote: "Given finding of NSVT, this puts her at high risk for SCD, discussed with her in [detail] about her risk and need for ICD to which she agrees." (R. 314.) After another visit about a month later, on **August 29, 2011**, Dr. Suradi wrote that another physician had had a long discussion with Ms. Arnold that day regarding an ICD and she stated that she wanted to think about it and let them know. (R. 329.) During the hearing before the administrative law judge about nine months later, on **June 1, 2012**, Ms. Arnold testified, in response to questions by her counsel, that her physicians want her to have a defibrillator implanted and she had an appointment on July 7, 2012, to start that process. (R. 41-42.) An earlier appointment to have a defibrillator implanted was cancelled when she became pregnant. (R. 42.)

11

Ms. Arnold argues that the ALJ's failure to specifically address her diagnosed higher risk for SCD and need for an ICD was error because they are of "major importance when determining the severity of her cardiac myopathy and how it affects her ability to work." (*Memorandum of Plaintiff* [doc. 16] ("*Brief*"), at 17.) "Since the ALJ did not mention these findings, it can only be assumed that she was unaware of these records and they were not considered in [the ALJ's] finding." (*Id.*) Ms. Arnold contends that the ALJ did not discuss any findings after a consultative examination that was performed in early June 2011.

Ms. Arnold is incorrect that the ALJ did not mention any findings after June 2011 and must not have considered Dr. Suradi's reports containing his diagnosis of increased risk for SCD and his prescription for an ICD. The ALJ specifically cited Dr. Suradi's report of his July 18, 2011, examination of Ms. Arnold, in which he recorded his diagnosis of high risk for SCD and prescribed an ICD. (R. 21 (citing "Exhibit 12F/3", Exhibit 12 being the medical records including Dr. Suradi's reports, (R. 325-33), and page 3 being the first page of Dr. Suradi's report of the July 18, 2011 visit, (R. 327)).)[2] It is apparent that the ALJ was aware of and reviewed the relevant records of Dr. Suradi.

Although it is true that the ALJ did not specifically address Ms. Arnold's higher risk for SCD or need for an ICD, it is not self-evident, and Ms. Arnold has not shown, that

---

[2] The ALJ mistakenly gave a date of March 2011 for this report.

these facts are of "major importance when determining the severity of her cardiac myopathy and how it affects her ability to work", as Ms. Arnold contends, or otherwise required specific address in the context of the record evidence. Ms. Arnold points to no medical opinion so stating. In his July 18, 2011 report, Dr. Suradi wrote that he "[s]trongly advised against any heavy/strenuous exercise", but he did not note any other work or functional limitations. In addition, this "strong advice" was simply retained, verbatim, from his report of Ms. Arnold's May 9, 2011, visit, before her higher SCD risk and ICD need had manifested. In other words, Dr. Suradi did not prescribe any increased functional limitations as a result of her SCD risk and ICD need.

In addition, the ALJ assigned "great weight" to the expert physical assessment that was affirmed by Dr. Sands, the state-agency physician who reviewed the record, including the Wishard Hospital records containing Dr. Suradi's reports, on reconsideration review. (R. 22.) The ALJ wrote that he assigned great weight to "the physical assessment offered by Fernando R. Montoya, M.D., in June 2011 (Exhibit 7F [R. 292-99]) *and affirmed in Exhibit 10F* [R. 321]." (R. 22 (emphasis added).) The ALJ noted that Dr. Montoya, who conducted the initial review of Ms. Arnold's applications, (R. 50, 51, 292-99), opined that Ms. Arnold could perform the full range of medium work, which the ALJ specifically noted was consistent with Dr. Suradi's advice that Ms. Arnold avoid extreme physical exertion, (R. 22). The affirmance of Dr. Montoya's assessment, to which the ALJ also accorded "great weight", was given by Jonathan Sands, M.D., on August 8,

13

2011, (R. 321), as part of his reconsideration review of Ms. Arnold's applications, (R. 52, 53). While Dr. Montoya's opinion apparently was rendered before Dr. Suradi's reports had entered the record, (R. 57, 61), Dr. Sands' review of the record was conducted and his confirmatory opinion was rendered after Dr. Suradi's reports entered the record, (R. 67, 70). Thus, after reviewing the record, including Dr. Suradi's reports, Dr. Sands affirmed the substance of Dr. Montoya's opinion, to which the ALJ assigned great weight. Therefore, Dr. Sands' expert medical opinion supports the ALJ's findings. In the absence of evidence to the contrary, the Court finds that the ALJ was aware of and considered Dr. Suradi's opinions and was aware of the bases for Dr. Sands' opinion, including Dr. Suradi's reports.

Ms. Arnold has not shown that the ALJ erred by not explicitly discussing Ms. Arnold's higher risk of SCD and need for an ICD. In addition, Ms. Arnold has not shown, by citation to evidence in the record or otherwise, that a remand on this ground might lead to a different result. Finally, the Court notes that Ms. Arnold did not present or highlight this issue to the ALJ at the hearing. In response to her counsel's questioning, Ms. Arnold testified that her physicians wanted her to get a defibrillator and that she had made plans to do so, (R. 41-42), but counsel did not expand on the point or mention her risk for SCD, and he did not argue to the ALJ that either had an effect on her functional limitations. As noted, the ALJ limited Ms. Arnold to medium work, which he specifically noted was consistent with the only physical limitation that Dr. Suradi recorded. Ms.

14

Arnold had the opportunity to assert the significance of her SCD risk and ICD need to the ALJ and to present any expert medical opinion she had on the matter, but she did neither. The ALJ, and the Court, are entitled to assume that, if such an opinion could have been presented, then it would have been.

**3. Ms. Arnold's obesity.** Ms. Arnold argues that the ALJ erred by failing to list her obesity as a severe or non-severe impairment or discuss its effect on her disability.[3] Ms. Arnold explicitly admits that her applications did not claim obesity as an impairment and she implicitly admits that she did not assert it in any of her submissions to the agency and did not present or argue it to the ALJ during the hearing. But she contends that her obesity was apparent and that it was included in record evidence and she argues that caselaw and the Commissioner's regulations and rulings declare that an ALJ must factor a claimant's obesity in his disability determination.

The Court agrees with the Commissioner that Ms. Arnold has not shown that the ALJ erred. Ms. Arnold's argument fails because she has failed to specify how her obesity impairs her functional capacity and she fails to cite *any* evidence or opinion in the record that supports a disabling functional impact of her obesity. *See Skarbeck v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006). When the

---

[3] As of March 14, 2012, Ms. Arnold weighed 233 pounds with a body mass index ("BMI") of thirty-three. According to S.S.R. 02-1p, clinical guidelines established by the National Institutes of Health describes a BMI of 30 or above as "obesity."

15

Commissioner pointed out this failure in her *Response*, Ms. Arnold still did not include any such citations in her *Reply*. Ms. Arnold was represented by counsel during the administrative process, including the hearing, and, thus, had ample opportunity to submit, highlight, and argue any available evidence showing the functional limitations of her obesity. An ALJ is entitled to assume that a claimant represented by counsel is making her best case for benefits. *Treat v. Colvin*, No. 1:13-cv-2-SEB-DML, *Order*, 2014 WL 1256006, *3 n. 1, 2014 U.S.Dist.LEXIS 39694 (S.D. Ind., March 25, 2014) (citing *Glenn v. Secretary of Health & Human Services*, 814 F.2d 387, 391 (7th Cir. 1987)). In addition, the Court will not remand a claim to the Commissioner unless there is reason to believe that there might be a different result. *See Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Because Ms. Arnold cites no evidence or opinion in the record supporting the disabling impact of her obesity, there is no reason to believe that a remand might change the Commissioner's determination.

Ms. Arnold has not shown that the ALJ erred by failing to specifically address her obesity's effect on her functional capacity and availability of jobs.

## Recommendation

Because Ms. Arnold has not shown that the Commissioner's decision on her applications is not supported by substantial evidence or the effect of legal errors, this magistrate judge recommends that the Commissioner's decision be **AFFIRMED**.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. ' 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. ' 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:**  08/07/2015

*[signature]*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.